UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURIE G.,

               Plaintiff,                    **DECISION AND ORDER**

    v.

                                             1:24-CV-00208 EAW

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

# INTRODUCTION

Represented by counsel, plaintiff Laurie G. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 4; Dkt. 6), and Plaintiff's reply (Dkt. 8). For the reasons discussed below, the Commissioner's motion (Dkt. 6) is granted, and Plaintiff's motion (Dkt. 4) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on April 6, 2021. (Dkt. 3 at 21, 79).[1] In her application, Plaintiff alleged disability beginning December 28, 2020, due to: "IBS with diarrhea; Ulcerative Colitis; Lymp; Anxiety; PTSD; Major Depressive Disorder; Barrett's Esophagus; Headaches; Insomnia; Pancreatic Cysts/Pseudocysts; Broken left foot." (*Id.* at 21, 81). Plaintiff's application was initially denied on August 10, 2021. (*Id.* at 21, 108-19). A telephonic hearing was held on March 15, 2023, before administrative law judge ("ALJ") Sujata Rodgers. (*Id.* at 21, 41-64). On March 29, 2023, the ALJ issued an unfavorable decision. (*Id.* at 18-36). Plaintiff requested Appeals Council review; her request was denied on January 17, 2024, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2022. (Dkt. 3 at 23). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from her alleged onset date of December 28, 2020, through her date last insured of June 30, 2022. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "status post fracture of the left foot; left knee osteoarthritis; obesity; depressive disorder; and anxiety disorder." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of gastroesophageal reflux disorder, sleep apnea, headaches, atrial fibrillation, hypertension, and foot pain, were non-severe. (*Id.* at 24).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 25). The ALJ particularly considered the criteria of Listings 1.15, 1.18, 12.04, and 12.06 in reaching her conclusion. (*Id.* at 25-27).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> she could occasionally climb ramps and stairs, but she could never climb ladders, ropes, and scaffolds. The claimant could occasionally balance on uneven or slippery surfaces, stoop, kneel, crouch, and crawl. The claimant could understand, remember, and carry out simple instructions for two-hour periods over an eight-hour workday and a forty-hour workweek.

(*Id.* at 27).

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a parking lot attendant, bus monitor, and cashier, since that work did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.* at 35). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ erred by failing to consider whether lymphocytic colitis was a severe impairment at step 2 of the sequential analysis, and in failing to account for it at step 4 in the RFC, and (2) the ALJ erred in assessing the opinion offered by Ahmad Mafi, D.O., Plaintiff's primary care physician. (Dkt. 4-1 at 12-22). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

A. **Plaintiff's Lymphocytic Colitis**

Plaintiff's first argument is that remand is warranted because the ALJ failed to consider whether Plaintiff's lymphocytic colitis was a severe impairment at step 2, and then failed to account for that impairment at step 4 in formulating the RFC. (Dkt. 4-1 at 12-18). In response, the Commissioner argues that Plaintiff has failed to meet her burden of showing that she had a medically determinable impairment of lymphocytic colitis, including because such a diagnosis is not supported by any objective medical evidence. (Dkt. 6-1 at 8-15).

At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the

Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. "The following are examples of 'basic work activities': 'walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citations omitted), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012).

"The claimant bears the burden of presenting evidence establishing severity." *Id.* Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)) (alteration in original). Further, a severe impairment must persist for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (disability involves impairment "which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").

At step 2, the ALJ found that Plaintiff had both severe and non-severe impairments. (Dkt. 3 at 23). With respect to the non-severe impairments, the ALJ identified the specific impairment and discussed why she found it to be non-severe, including by pointing to specific evidence in the record supporting why that impairment did not cause Plaintiff more than a minimal work-related limitation. (*Id*. at 24).

Plaintiff identifies information in the record she contends supports a finding that her lymphocytic colitis is a severe impairment. Specifically, Plaintiff notes a diagnosis in the record from January 2020 (*see* Dkt. 4-1 at 14)—but that diagnosis was approximately one year before the disability onset date of December 2020. Plaintiff also cites medical records documenting that she complained of flare-ups, bloating, discomfort, and diarrhea (*id*.)— and the ALJ specifically discussed Plaintiff's subjective reports of discomfort when assessing the RFC. However, notably lacking from Plaintiff's record are objective findings supporting lymphocytic colitis as a severe impairment during the period of disability. In fact, the record supports that the objective evidence indicates that Plaintiff did not in fact have lymphocytic colitis. Specifically, Plaintiff underwent a colonoscopy and biopsy in March 2020, which showed that the colon was normal, and the biopsy was "negative for lymphocytic colitis." (*See* Dkt. 3 at 530 (March 13, 2020 report from Gastroenterology Associates, LLP, which states: "Normal Colon/Rectal lining cells; Negative for Lymphocytic Colitis; Negative for Microscopic Colitis; Some scattered intraepithelial

lymphocytes were noted in the lining but not diagnostic of lymphocytic colitis at this time")).

Even if Plaintiff had demonstrated that lymphocytic colitis was a severe impairment at step 2, the ALJ considered Plaintiff's complaints regarding this alleged impairment and related gastrointestinal issues when assessing the RFC. (*See, e.g.*, Dkt. 3 at 28 (discussing Plaintiff's report in January 2021, that she "felt her colitis was flaring"); *id*. (in March 2021, discussing that Plaintiff reported that she could not work with her IBS, that she was bullied at work for using the bathroom, but that her providers did not recommend that she stop working); *id*. at 31 (discussing that in June 2022, Plaintiff visited the Gastroenterology Associates and reported that she had a relapse of colitis, including 10 weeks of diarrhea, and further reported that she had a history of lymphocytic colitis, and that her symptoms had been generally well controlled with medications); *id*. at 32 (discussing Plaintiff's hearing testimony that her stomach condition causes her to get up several times during the night to use the bathroom)). The ALJ concluded that further restrictions were not required to address these complaints, nor was he required to do so given that Plaintiff's subjective complaints do not require a finding of disability. *See Andrew P. v. Comm'r of Soc. Sec.*, 719 F. Supp. 3d 248, 255 (W.D.N.Y. 2024) ("Much of the evidence cited by Plaintiff is based on his own subjective complaints of his mental functioning. It is well-settled that while the ALJ is required to consider Plaintiff's subjective complaints, the ALJ is not

required to grant disability benefits based on subjective complaints alone, particularly when those subjective complaints are contradicted by other evidence in the record.")).

For those reasons, the Court finds that the ALJ did not err when she did not assess lymphocytic colitis as a severe impairment at step 2, nor did she err by not incorporating limitations for any such impairment in the RFC. It is clear to the Court that the ALJ considered Plaintiff's complaints of gastrointestinal issues when assessing the RFC, and her determination that further limitations were not required is supported by substantial evidence. Accordingly, remand is not required on this basis.

### B. Assessment of Dr. Mafi's Opinion

Plaintiff's second and final argument is that the ALJ erred in assessing the supportability and consistency factors when considering Dr. Mafi's opinion. (Dkt. 4-1 at 18-22). In response, the Commissioner argues that the ALJ adequately evaluated Dr. Mafi's medical opinion, including by considering the supportability and consistency factors. (Dkt. 6-1 at 15-21).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the

frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id*. at § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct.

1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ may—but is not required to—explain how she considered the remaining factors. *Id*.

Dr. Mafi completed a "Treating Physician's Functional Capacity Assessment" on March 14, 2023. (Dkt. 3 at 562). He opined that Plaintiff could frequently lift and carry five pounds, stand and/or walk for less than two hours per day, sit for four hours per day and requires the ability to walk around, and she was limited in pushing and/or pulling with the upper and lower extremities due to arthritis and back pain. (*Id*.). For her mental capabilities, Plaintiff was rated as "fair"—meaning "substantial loss of ability to perform the named activity in regular, competitive employment and, at best, could do so only in a sheltered work setting where special considerations and attention are provided,"—in the following areas of mental functioning: the ability to remember work-like procedures; the ability to understand and remember very short and simple instructions; the ability to carry out very short and simple instructions; the ability to maintain attention for extended periods of 2 hour segments; the ability to maintain regular attendance and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being unduly distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, which requirements are usually strict; the ability to ask simple

questions or request assistance; the ability to accept instructions [and] respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in a routine work setting; and the ability to be aware of normal hazards and take appropriate precautions. (*Id*. at 563-65). Plaintiff would be off-task for 25 percent during the workday, in addition to regularly scheduled breaks, and she would be absent from work for seven days per month. (*Id*. at 565).

The ALJ discussed Dr. Mafi's opinion, which she found to be "unpersuasive," in the written determination:

> First, I find that Dr. Mafi's opinion is inconsistent with the claimant's history of good response to medical treatment. The claimant's left foot fracture responded well to a brief period of casting and scooter use. While her knee pain did not initially respond to conservative measures, she did report good benefit from her December 2021 left knee arthroscopy. After her foot and knee pain subsided, she was also able to make significant progress in her obesity, reducing her BMI to 30.1 by January of 2023, which is just on the cusp of a finding of ongoing obesity. Second, I find that Dr. Mafi's opinion is inconsistent with the claimant's findings upon baseline physical examination. The claimant's gait was found to be antalgic during periods of symptom exacerbation, such as in the months prior to her December 2021 knee surgery. Her gait and station were noted to be normal during several other points in time, including the early months of 2021 and in June of 2022. She has generally been found to be neurologically intact with intact sensation, and Dr. Liu found 5/5 strength in all extremities during her August 2021 consultative examination. Third, I find that Dr. Mafi's opinion is inconsistent with the claimant's strong range of reported daily activities, including cooking, cleaning, shopping, driving, and attending her appointments as needed.

(*Id*. at 33).

As an initial matter, it is plain from the written determination that the ALJ considered both the supportability and consistency factors when assessing Dr. Mafi's

opinion. The ALJ discussed that Dr. Mafi's opinion was not supported by other medical evidence in the record, and it was inconsistent with Plaintiff's own reports of her functioning. The written determination includes a lengthy discussion of Plaintiff's medical records, and it is plain that these records are inconsistent with Dr. Mafi's highly restrictive opinions of Plaintiff's physical and mental functioning. (*See, e.g.*, Dkt. 3 at 28 (discussing examination from January 2021, where Plaintiff was noted to have a normal gait and station); *id.* (discussing that in May 2021, records showed that Plaintiff was "doing well with no pain," an x-ray showed that her fracture was healed, and she was advised to gradually return to activity, and could follow up on an as needed basis); *id.* at 29 (discussing consultative examination from August 2021, which noted a normal gait and stance, she was able to rise from the chair without difficulty, she had no sensory deficits, and she showed 5/5 strength in all extremities)).

Further, it is clear from the written determination that Dr. Mafi's opinion was inconsistent with the opinions offered by other medical professionals in the record, who opined that Plaintiff had less severe restrictions. (*See id.* at 29 (discussing opinion offered by Hongbiao Liu, M.D., who opined that Plaintiff would have mild to moderate limitation in prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing); *id.* at 31 (discussing advising physician's opinion that Plaintiff could lift up to fifty pounds occasionally and twenty-five pounds frequently, sit for six hours, and stand or walk for six hours in an eight-hour workday, and also that she could occasionally climb, balance, stoop, kneel, crouch, or crawl); *see also id.* at 29, 30 (discussing advising psychologist opinions that Plaintiff had no limitation in the

ability to understand, remember, or apply information, no limitation in interacting with others, no limitation in the ability to maintain concentration or persistence, and a mild limitation in the ability to adapt or manage herself); *id*. (discussing consultative examiner's opinion that Plaintiff could understand, remember, and apply simple and complex directions, use reason and judgment to make work-related decisions, and interact adequately with others)). Accordingly, it is clear from the written determination that the ALJ considered Dr. Mafi's opinion and its consistency with these other opinions in the record.

Plaintiff points to certain evidence she contends that the ALJ did not consider, including with respect to Plaintiff's knee pain. (Dkt. 4-1 at 20). As an initial matter, an ALJ is not required to discuss every piece of evidence in the record when assessing the RFC. *Jennifer S. v. Comm'r of Soc. Sec.*, 771 F. Supp. 3d 256, 264 (W.D.N.Y. 2025) ("an ALJ is not required to discuss every shred of evidence in the record"). Here, the ALJ discussed Plaintiff's complaints of knee pain. (*See* Dkt. 3 at 29-30 (discussing Plaintiff's complaints of bilateral knee pain and examinations for these complaints)). The ALJ further discussed that following surgery in December 2021, Plaintiff's knee pain improved. (*Id*. at 30 (noting that at follow-up appointment in January 2022, Plaintiff was doing well overall, and her pain was manageable); *id*. at 31 (in February 2022, Plaintiff reported that she was doing well six weeks postoperatively, and she was encouraged to continue with stretching and strengthening); *see also id*. (discussing that in April 2022, Plaintiff reported she was "ambulating much better than previously"); *id*. (discussing that in July 2022, Plaintiff reported that she had lost weight, felt great, and had less joint pain)). In other

words, it is plain from the written determination that the ALJ fully considered Plaintiff's knee pain when assessing the RFC and did not selectively rely on evidence favorable to a finding of no disability.

Finally, Plaintiff takes issue with the ALJ's discussion of Plaintiff's activities of daily living as being inconsistent with Dr. Mafi's opinion. (Dkt. 4-1 at 21). While an ALJ generally may not assess an RFC based solely on a Plaintiff's activities of daily living, it is proper—as the ALJ did here—to discuss a claimant's activities of daily living when evaluating opinion evidence in the record, and the consistency of those daily activities with the opinion evidence. *See, e.g., Barrington C. v. Comm'r of Soc. Sec.*, No. 5:24-cv-00528 (AMN/TWD), 2025 WL 1884886, at *8 (N.D.N.Y. May 12, 2025) (collecting cases), *adopted*, 2025 WL 1682610 (N.D.N.Y. June 16, 2025). Further, the ALJ did not discount Dr. Mafi's opinion based solely on Plaintiff's activities of daily living. Rather, as explained above, the ALJ considered the consistency and supportability of Dr. Mafi's opinion in conjunction with other opinion evidence in the record and Plaintiff's medical records. Accordingly, remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 6) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 4) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

                                                         _____
                                                         ELIZABETH A. WOLFORD
                                                         Chief Judge
                                                         United States District Court

Dated: September 15, 2025
        Rochester, New York